IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL SCIENTIFIC CORP.,
a Michigan corporation,

    Plaintiff,

v.

SHEERVISION, INC.,
a California corporation,
and THOMAS H. CAOUETTE, JR.,
an individual,

    Defendants.

Case No. 2:10-cv-13582

Hon. Gerald E. Rosen

---

John G. Posa (P49445)
Allen M. Krass (P16218)
Gifford, Krass, Sprinkle,
  Anderson & Citkowski, P.C.
2701 Troy Center Drive, Suite 330
P.O. Box 7021
Troy, Michigan 48007
(248) 647-6000
(248) 647-5210 (Fax)
litigation@patlaw.com

*Attorneys for Plaintiff*

Neil J. Juliar (P15625)
Conlin, McKenney & Philbrick, P.C.
350 South Main Street, Suite 400
Ann Arbor, Michigan 48104
(734) 761-9000
(734) 761-9001
Juliar@cmplaw.com

*Co-Counsel for Plaintiffs*

---

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

PLAINTIFF, General Scientific Corporation ("GSC"), complains of Defendants SheerVision, Inc. ("SheerVision") and Thomas H. Caouette, Jr. ("Caouette") as follows:

### I.    THE PARTIES

1.    Plaintiff GSC is a Michigan corporation having its principal place of business at 77 Enterprise Drive, Ann Arbor, Michigan 48103.

1

2. Upon information and belief, Defendant SheerVision is a California corporation which maintains offices and its principal place of business at 4030 Palos Verdes Drive N., Suite 104, Rolling Hills Estates, California 90274.

3. Caouette is an individual believed to reside at 830 Millcreek Rd., Arnold, Maryland 21201.

## II.   JURISDICTION

4. Jurisdiction is conferred on this Court by 15 U.S.C. §1123 as this case involves alleged violations by SheerVision and Caouette of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and venue is proper under 28 U.S.C. §1391(b)(2). Jurisdiction is further appropriate under 17 U.S.C. §301, as a portion of this action is copyright related and pre-empted under federal law. Jurisdiction is further appropriate under 35 U.S.C. §281 and 28 U.S.C. §1338. Venue is proper under 28 U.S.C. §1400(b) and 28 U.S.C. §1391(c), as a portion of this action is related to patent infringement by SheerVision.

5. The state law claims asserted herein are pendent to GSC's federal claims.

## III.   BACKGROUND

6. Plaintiff General Scientific Corp. ("GSC") is a closely held company that *inter alia* designs, manufactures, assembles, packages, and sells magnifying surgical loupe products, including telemicroscopes, lights, video cameras and other accessory items under the brand name *SurgiTel*®. It has been engaged in this product line since at least 1992.

7. Defendant SheerVision is a publicly traded (OTC: SVSO) California corporation having its principal place of business at 4030 Palos Verdes Drive North, Suite 104, Rolling Hills Estates, California 90274.

8. SheerVision is engaged in the importation and marketing of magnifying surgical loupe products, including telemicroscopes, lights, video cameras, and other accessory items in direct competition with General Scientific Corp. On information and belief, SheerVision first began importing magnifying loupe products and related goods in 2006, directly copying the GSC magnifying loupe products.

9. GSC is in a very competitive industry, and it has secured numerous patents to protect its interests. In 2007, GSC initiated an action in the United States International Trade Commission (ITC) against SheerVision and its supplier, Asian Sourcing corporation, alleging the unlawful importation of infringing goods (Investigation No. 337-TA-611, entitled "In the Matter of CERTAIN LOUPE PRODUCTS AND COMPONENTS THEREOF"). In its Complaint, GSC alleged that SheerVision and supplier Asian were engaged in the unlawful importation, the sale for importation, and the sale within the United States after importation, of products which infringe patents owned by GSC. In July 2008 the action resulted in the issuance of an exclusion order preventing Asian from importing certain products. The parties to the ITC action also entered into a Settlement and Release Agreement dated January 4, 2008, which *inter alia*, contained a provision barring sale by SheerVision of a product identified in Exhibit D of that agreement after January 31, 2008. That Exhibit D is attached to this Complaint as Exhibit 1. Despite that agreement SheerVision has continued to sell optical loupes corresponding to Exhibit D. The sale of these products infringes SheerVision U.S. Patent No. 6,904,146.

10. The surgical loupe products sold by both GSC and SheerVision are directed toward physicians, primarily surgeons, dentists, and dental technicians. Based on statements contained in the form 10-Q filed by SheerVision with the U.S. Securities and Exchange Commission on July 20, 2010, at least until the first quarter of SheerVision's 2010 fiscal year,

SheerVision limited its direct sales efforts primarily to the dental hygienist market. Beginning in the first quarter of fiscal year 2010, following General Scientific's practice, SheerVision began hiring direct salespeople to sell directly to dentists and surgeons in the U.S. The 10-Q states "As of the end of May [2010], we increased our direct sales force from three to nine, and we have plans to add several more during the coming months."

11. On information and belief SheerVision viewed General Scientific's direct sales force as the primary source of experienced direct sales personnel for the surgical loupes to the medical and dental community and in 2010 engaged five direct salespersons, three of whom left General Scientific to work for SheerVision, two of whom had previously worked for General Scientific.

12. SheerVision has engaged in a repetitive pattern of hiring GSC salespeople to obtain GSC know-how and intellectual property and use it in competition with GSC. The GSC sales representatives hired by SheerVision since October, 2009 include Caouette, John Colantuno, Brandon Hayes, Jason Glenn, Brandon Wohl and Joanna Knehr. SheerVision also actively solicited independent representative Gerald McFarland, who eventually remained with GSC.

13. Defendant Caouette had been employed by GSC as a sales representative from February 28, 2006 to March 22, 2010, covering territory which included Washington, D.C., Maryland and Virginia. In connection with his employment by GSC, Caouette interviewed at GSC's offices in Ann Arbor, Michigan, was hired and trained at those offices, regularly visited Michigan for business purposes, and had regular and ongoing telephone and email contact with GSC's Ann Arbor offices.

14. Also in connection with his employment by GSC, Caouette was provided with a GSC laptop and cell phone and with confidential, proprietary, trade secret and copyrighted material of GSC including, but not limited to, customer lists, sales leads, sales planning, pricing and performance information, sales brochures and digital media, and demonstration videos. Most of this information, including the entire GSC sales database, was contained on the GSC laptop computer provided to Caouette by GSC for use in connection with his employment by GSC.

15. Shortly after the termination of his employment with GSC, and while wrongfully retaining GSC's laptop and the information contained thereon, Caouette visited the offices of, and was hired, by Defendant SheerVision.

16. Caouette allowed SheerVision to download his entire GSC contact list and database and also provided SheerVision with GSC marketing materials, including videos of dental and surgical procedures made using GSC cameras. Much or all of the GSC material which Caouette wrongfully retained and delivered to SheerVision constituted proprietary, confidential, trade secret and/or copyrighted material of GSC.

17. Effective in or about early July, 2010 SheerVision hired former GSC salesperson John Colantuno. Several weeks before starting his SheerVision employment Mr. Colantuno delivered to SheerVision his entire GSC sales kit, including a special device which GSC had developed for use in measuring and fitting loupe users with larger heads.

18. Both GSC and SheerVision sell video cameras which mount on the heads of surgeons and dentists and record procedures to video files on nearby computers. In early 2010 SheerVision started purchasing such cameras produced by a company called VisVocus. Software problems prevented the VisVocus camera images from being recorded. In order to

enable itself to continue selling cameras while a hoped for software fix was being developed, SheerVision allowed sales representatives to use the GSC video provided to SheerVision by Caouette for SheerVision sales purposes and to represent that the GSC videos were in fact recordings made with SheerVision products. This was done on occasions including the California Dental Association meeting in May 2010 and a presentation made by SheerVision representatives Gordon Stover and Caouette at UCLA-Harbor General Hospital. The Video is the subject of a GSC copyright and the public performance of the Video constitutes copyright infringement under 17 USC §106(5).

19. After joining SheerVision Mr. Caouette, without authority, used his knowledge of the GSC email system, including login procedures and passwords, to log into the business email accounts of GSC salespeople and view their activity. This was done in the course of Caouette's employment by SheerVision and with the active knowledge and encouragement of SheerVision's CEO Suzanne Lewsadder. GSC's email service is hosted on computers located in the Eastern District of Michigan. GSC believes that it will incur in excess of $5,000 in costs to address and remedy the harm caused by the unauthorized accessing of its computers by SheerVision and Caouette, in addition to any damage to GSC's business through use of the confidential information accessed from the email system.

20. In printed advertising materials and on its Internet website, SheerVision copied and published a photograph of a competitive GSC product. The photograph was taken by an employee of GSC in the course of business, and GSC owns the copyright in the photograph. This conduct violates 15 USC §1125(a)(1) as well as 17 USC §§106(1) and (3).

6

## COUNT I – VIOLATION OF THE LANHAM ACT
## SECTION 43(a) [15 U.S.C. §1125(a)]
## (SHEERVISION AND CAOUETTE)

21. GSC incorporates herein by reference those facts alleged in paragraphs 1 through 20 above.

22. Upon information and belief, Defendants SheerVision and Caouette have misappropriated and used copyrighted materials owned by GSC depicting GSC's products for advertising purposes and, in so doing, have passed off GSC products depicted in such materials as SheerVision's, thereby causing confusion, mistake or deception as to SheerVision's affiliation, connection, or association with GSC, including the origin, sponsorship, or approval by GSC of SheerVision's goods, services, or commercial activities. As such, Defendants are in violation of Lanham Act Section 43(a), 15 U.S.C. §1125(a).

23. Defendants' violation of the Lanham Act caused damage to Plaintiff, including harm for which Plaintiff is without an adequate remedy at law.

24. As Defendants were fully aware that the copyrighted materials which they misappropriated and used originated with Plaintiff, Defendants' violation of the Lanham Act is willful and deliberate.

## COUNT II – INFRINGEMENT OF COPYRIGHT
## (SHEERVISION)

25. GSC incorporates herein by reference those facts alleged in paragraphs 1 through 24 above.

26. Upon information and belief, Defendant SheerVision is misappropriating copyrighted and registered materials owned by GSC for advertising purposes through copying, publishing, and publicly performing, thereby infringing upon copyrights owned by GSC.

27. Defendant's infringement GSC's copyrights is causing damage to Plaintiff, including harm for which Plaintiff is without an adequate remedy at law.

28. As SheerVision was fully aware that the copyrighted materials which it misappropriated and used originated with Plaintiff, Defendant's copyright infringement is willful and deliberate.

## COUNT III – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. §1030
### (SHEERVISION AND CAOUETTE)

29. GSC incorporates herein by reference those facts alleged in paragraphs 1 through 28 above.

30. The computer server on which GSC's email service is hosted is a "protected computer" under 18 U.S.C. §1030 as it is used in and affects interstate commerce.

31. Defendants SheerVision and Caouette illegally accessed GSC's email system, as outlined above, with the intent to cause loss or damage to, and to defraud, GSC by improperly obtaining confidential information of GSC to be used for SheerVision's competitive advantage.

32. The actions of SheerVision and Caouette in accessing GSC's email system violated 18 U.S.C. §1030 in such a manner as to give rise to a civil cause of action.

## COUNT IV – UNFAIR COMPETITION
### (SHEERVISION AND CAOUETTE)

33. GSC incorporates herein by reference those facts alleged in paragraphs 1 through 32 above.

34. Defendants have engaged in unfair and unethical trade practices harmful to GSC, including, but not limited to, the following:

(a) Obtaining and exploiting GSC's confidential and proprietary information

and trade secrets;

(b) Engaging in a concerted pattern of hiring and exploiting the knowledge of GSC's sales force;

(c) Infringing on GSC's patents and violating its copyrights;

(d) Palming off GSC video as video which demonstrates the capabilities of SheerVision products.

(e) Accessing GSC email to obtain and exploit sales leads and other commercially valuable information.

35. The actions of SheerVision and Caouette constitute the tort of unfair competition.

## COUNT V – PATENT INFRINGEMENT (SHEERVISION)

36. GSC incorporates herein by reference those facts alleged in paragraphs 1 through 35 above.

37. U.S. Patent 6,704,141 issued on March 9, 2004 to General Scientific as the assignee of the inventors David Nowak and Richard Kim and has been owned by General Scientific since its issue.

39. SheerVision has infringed this patent by selling in the U.S. optical mounting assemblies corresponding to various claims of the patent and practicing a method for customizing an ocular mounting assembly infringing other claims of the patent.

40. The products sold by SheerVision which infringe this patent are sold in direct competition to products sold by General Scientific, resulting in General Scientific losing sales of its competitive products and resulting financial losses.

41. SheerVision at all times pertinent had actual knowledge of U.S. Patent 6,704,141, rendering this an exceptional case within the meaning of 35 U.S.C. 285.

### COUNT VI – BREACH OF CONTRACT
### (SHEERVISION)

42. GSC incorporates herein by reference those facts alleged in paragraphs 1 through 41 above.

43. Sale by SheerVision after January 31, 2008 of products corresponding to Exhibit 1 hereof constitutes a breach of the Settlement and Release Agreement of January 4, 2008 between General Scientific and SheerVision and particularly the undertaking of Clause 2.1.

44. The products corresponding to Exhibit 1 hereof are sold by SheerVision in direct competition with products sold by General Scientific resulting in a loss of sales of the General Scientific products and financial loss to General Scientific.

WHEREFORE, Plaintiff prays for entry of judgment granting the following relief:

(a) Determining that Defendant SheerVision is infringing upon copyrights owned by Plaintiff;

(b) Determining that Defendants have passed off products and/or services provided by Plaintiff as those of SheerVision in violation of the Lanham Act;

(c) An award of damages in such amount as the trier of fact may determine to be appropriate for Defendants' violation of 18 U.S.C. §1030;

(d) An award of damages in such amount as the trier of fact may determine to be appropriate for Defendants' unfair competition with Plaintiff; and

(e) An award of treble the profits lost by Plaintiff and attorneys fees resulting from SheerVision's infringement of U.S. Patent 6,704,141 as provided by 35 U.S.C. 284 and 285.

(f) An award of Plaintiff's damages resulting from SheerVision's breach of this January 4, 2008 Settlement and Release Agreement.

(g) An award of costs, attorney's fees, increased damages as provided by law, and such other and further relief as this Court may determine to be appropriate.

(i) Such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through its attorneys, hereby demands a trial by jury in the above cause of action.

Respectfully submitted,

s/John G. Posa
John G. Posa (P49445)
Allen M. Krass (P16218)
Gifford, Krass, Sprinkle,
   Anderson & Citkowski, P.C.
2701 Troy Center Drive, Suite 330
Troy, Michigan 48007
(248) 647-6000
(248) 647-5210 - Fax
litigation@patlaw.com
*Attorneys for Plaintiff*

s/Neil J. Juliar
Neil J. Juliar (P15625)
Conlin, McKenney & Philbrick, P.C.
350 South Main Street, Suite 400
Ann Arbor, Michigan 48104
(734) 761-9000
(734) 761-9001 - Fax
Juliar@cmplaw.com
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I CERTIFY that on October 6, 2010, I filed the foregoing document with the Clerk of the Court, via the ECF system, which will provide electronic notification of the filing to the following counsel of record:

>Robert C. Brandenburg
>Robert C.J. Tuttle
>Brooks Kushman P.C.
>1000 town Center, 22nd Floor
>Southfield, MI 48075

>__/s/Shannon Jennings____
>Shannon Jennings

# EXHIBIT 1



EXHIBIT D