**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GENERAL SCIENTIFIC CORP.,
a Michigan corporation,

    Plaintiff,

v.

SHEERVISION, INC.,
a California corporation,
and THOMAS H. CAOUETTE, JR.,
an individual,

    Defendants.

Case No. 2:10-cv-13582-GER-MJH

Hon. Gerald E. Rosen
Magistrate Michael J. Hluchaniuk

---

| | |
|---|---|
| John G. Posa (P49445)<br>Allen M. Krass (P16218<br>Gifford, Krass, Sprinkle,<br> Anderson & Citkowski, P.C.<br>Attorneys for Plaintiff<br>2701 Troy Center Drive, Suite 330<br>P.O. Box 7021<br>Troy, Michigan 48007<br>(248) 647-6000<br>(248) 647-5210 (fax)<br>litigation@patlaw.com | Robert C. Brandenburg (P28660)<br>John E. Nemazi (P33285)<br>Robert C. J. Tuttle (P25222)<br>Brooks Kushman, P.C.<br>Attorneys for Defendants<br>1000 W Town Center, 22nd Floor<br>Southfield, MI 48075<br>(248) 358-4400<br>(248) 358-3351 (fax)<br>rbrandenburg@brookskushman.com |

Neil J. Juliar (P15625)
Conlin, McKenney & Philbrick, P.C.
Co-Counsel for Plaintiffs
350 South Main Street, Suite 400
Ann Arbor, Michigan 48104
(734) - 761-9000
(734) 761-9001 (fax)
juliar@cmplaw.com

---

**PLAINTIFF'S ANSWER TO DEFENDANT SHEERVISION'S
MOTION TO DISMISS AND BRIEF IN SUPPORT**

## ANSWER TO MOTION

Plaintiff, General Scientific Corporation ("GSC") answers Defendant SheerVision's Motion to Dismiss Counts I through V of the First Amended Complaint or to require a more definite statement as follows:

1. Each count of the First Amended Complaint, when read with the background allegations contained in paragraphs six through twenty, avers sufficient facts in support of the cause of action asserted to state a plausible claim for relief which is not preempted by other law.

2. Notwithstanding the above, Plaintiff does not object to clarifying certain of its claims, and requests leave to file as its more definite statement the Second Amended Complaint attached hereto as Exhibit 1.

3. In support of this Answer, Plaintiff relies upon the Brief in Support submitted herewith.

> s/ Neil J. Juliar
> Conlin, McKenney & Philbrick
> Co-Counsel for Plaintiff
> 350 South Main Street, Suite 400
> Ann Arbor, Michigan 48104
> (734) 761-9000 / (734)761-9001 (fax)
> Juliar@cmplaw.com
> P15625

Dated: November 18, 2010

## TABLE OF CONTENTS

AUTHORITIES CITED .................................................................................................................ii

I. INTRODUCTION ..............................................................................................................1

II. ARGUMENT .....................................................................................................................2

    A. Applicable Standard...............................................................................................2

    B. Count I – Lanham Act............................................................................................3

    C. Count II –Copyright Infringement .........................................................................6

    D. Count III. – Computer Fraud and Abuse Act.........................................................6

    E. Count IV – Unfair Competition .............................................................................7

    F. Count V- Patent Infringement..............................................................................10

III. Conclusion .......................................................................................................................10

## AUTHORITIES CITED

### CASES

*ATC Distribution Group v. Whatever It Takes Transmissions & Parts, Inc.*
    402 F.3d. 700 (6th Cir.2005) ............................................................................ 9

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ......................................................................................... 2

*Bonito Boats v. Thunder Craft Boats*
    489 U.S. 141, 166 (1989) ................................................................................. 4

*Bravo Systems, Inc. v. Containment Technologies Corp.*
    96 F. 3d. 1372 (Fed. Cir. 1996) ........................................................................ 9

*Dastar Corporation v. Twentieth Century Fox*
    539 U.S. 23; 123 S.Ct. 2041; 156 L. Ed., 2d. 18 (2003) ............................... 5, 9

*Kelly Services v. Eidnes*
    530 F. Supp. 2d 940 (E.D. Mich. 2008) ........................................................... 7

*Mars, Inc. v. Kabushiki-Kaishi,*
    24 F.3d 1368 (Fed. Cir.1994) ..................................................................... 8, 10

*Massachusetts Cas. Ins. Co. v. Harmon*
    88 F.3d 415 (6th Cir., 1996) ............................................................................. 6

*Tiseo Architects, Inc. v. SSOE, Inc.*
    431 F. Supp. 2d. 735 (Ed. Mich. 2006) ............................................................ 4

*Water Technologies Corp. v. Calco*
    850 F2d. 660 Cir. (Fed. Cir.1988 ) ............................................................... 8, 9

### STATUTES AND REGULATIONS

F.R.C.P. 18(a)(2) ........................................................................................................ 2

F.R.C.P. 12(b)(6) ........................................................................................................ 1

15 U.S.C. § 1125(a) ................................................................................................ 3, 4

18 U.S.C. § 1030 ........................................................................................................ 6

28 U.S.C. §1338(b) .................................................................................................... 8

## **BRIEF IN SUPPORT**

### **I. INTRODUCTION**

Plaintiff, General Scientific Corporation ("GSC") a privately owned company based in Ann Arbor, Michigan and Defendant SheerVision, a publically traded company based in California, compete in the sale of magnifying surgical loupe products including telemicroscopes, lights, video cameras and other accessory Items. GSC has secured numerous patents to protect its interests. In a prior action between these parties, GSC initiated an action in the United States International Trade commission ("ITC") alleging that SheerVision and its supplier engaged in the unlawful importation of goods infringing GSC patents.

The prior action was concluded in 2008. In the summer of 2010 GSC received evidence that SheerVision was continuing to infringe on a GSC patent, and that a SheerVision employee (Defendant Caouette) had without authority accessed the GSC sales email system, which contained confidential sales information, while in the course of his employment with SheerVision. Subsequent investigation revealed that SheerVision had also violated the Lanham Act by passing off certain GSC material as its own, and violated the Copyright Act by using GSC copyrighted material for SheerVision's advertising purposes. After communications between GSC counsel, on the one hand, and SheerVision and its attorneys on the other, proved unfruitful, Plaintiff filed its Complaint against SheerVision and Caouette, followed by a six count First Amended Complaint filed on October 6, 2010. Defendant has moved to dismiss Counts I through V pursuant to F.R.C.P.12(b)(6) on the grounds they have been pled inadequately. In the alternative, Plaintiff seeks a more definite statement of each of these counts.

Plaintiff contends that the First Amended Complaint contains sufficient nonconclusory factual allegations as to each Count to demonstrate the existence of a plausible cause of action. Following the format of Defendant's Brief, the Counts will be discussed individually below.

## II. ARGUMENT

### A. Applicable Standard.

Defendant's Motion under Rule 12(b)(6) tests the sufficiency of the Complaint. Rule 8(a)(2) requires that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The meaning of this requirement was explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In *Twombly* the court held that it was insufficient to defeat a 12(b)(6) motion for an antitrust plaintiff to allege simply parallel conduct between or among antitrust violators, as while such conduct might be suggestive of a proscribed agreement and restrain of trade, it was not itself illegal, and was consistent with innocent action. Applying general pleading standards to a claim under Section 1 of the Sherman Act, the court held that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement [in violation of the Act] was made." 550 U.S. 544, 556. The court wrote that what was called for was simply "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement," and went on to note that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Ibid.* (internal quotations omitted). Describing its holding, the court wrote " . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570.

Plaintiff's pleading of Counts I through V of its Complaint will be discussed below against that standard.

### B. Count I – Lanham Act

Count I of the First Amended Complaint alleges violation of Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a) by SheerVision and Caouette. The facts alleged in support of that Count include the following. References are to the First Amended Complaint [1].

GSC and SheerVision compete in the marketing and sale of magnifying surgical loupe products and accessory items, including video cameras. (par. 8 and 9). SheerVision has recently shifted its focus to sales directly to dentists and surgeons, following GSC's established practice. (par 10). Caouette was employed by GSC for approximately four years, ending in March 2010. GSC provided Caouette with sales material including demonstration videos, sales brochures and digital media, which he retained after termination of his GSC employment and then delivered to SheerVision. (par. 16).

GSC and SheerVision compete in the sale of head-mounted cameras to record dental and surgical procedures to video files on nearby computers. SheerVision's system did not work. In order to continue selling these cameras in competition with GSC, SheerVision allowed its sales representatives, including Caouette, to use the GSC video provided to SheerVision by Caouette and represent to potential customers that GSC videos were in fact recordings made with, and demonstrating the capability of, SheerVision products. It is alleged that this was done on occasions including the California Dental Association meeting in May 2010 and a sales presentation made by Caouette for SheerVision at UCLA-Harbor General Hospital. (par. 18).

Defendant also misused a GSC photograph of a competitive GSC product by using this photograph in Defendant's printed advertising material and on its Internet website. (par. 20)

---

[1] The Lanham Act pleading in Plaintiff's proposed Second Amended Complaint relies on the same facts, but clarifies that Plaintiff seeks relief under both 15 U.S.C. §1125(a)(1)(A) and (B).

3

Plaintiff contends that the facts summarized above are sufficient to plead a violation of 15 U.S.C. §1125(a) (Lanham Act §43(a)). Section 43(a) forbids the use in commerce of a "false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same . . ." *Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 166 (1989). Here, it is plainly and specifically alleged that Defendants misrepresented the origin of the sales video used by them. Furthermore, when Defendants used the GSC videos to demonstrate the capabilities of non-GSC cameras, Defendants were misrepresenting the origin of the images produced by Defendant's cameras. These misrepresentations were violative of 15 U.S.C. §1125(a)(1)(A).[2]

The amended complaint further alleges that Defendant used a photograph of a GSC product in Defendant's own sales materials. Such activities unquestionably misrepresent the origin of the product depicted as being with Defendant, and constitute an additional Lanham Act violation.

The alleged acts of Defendant also violate 15 U.S.C. §1125(a)(1)(B). That subsection proscribes the use of false or misleading representations of fact in commercial advertising or promotion which misrepresent the characteristics or qualities of its own or another person's goods or services. The use by Defendant of GSC video to represent the qualities of Defendant's non-functional cameras misrepresents the characteristics and qualities of those cameras. These activities took place at sales and promotional meetings with Defendant's target customers, and were thus in the context of "commercial advertising or promotion."

The situation here is analogous to that presented in *Tiseo Architects, Inc. v. SSOE, Inc.*, 431 F. Supp. 2d. 735 (Ed. Mich. 2006). Plaintiff alleged both copyright infringement and

---

[2] Plaintiff recognizes that the misrepresentations alleged here are distinguishable from misrepresentation of the origin of the entire camera. While the significance of the distinction may be argued after discovery, Defendant contends that it need not be addressed in the context of a Rule 12(b)(6) motion.

4

violation of the Lanham Act resulting from defendant's use of plaintiff's design for a grocery store when it did the construction design for the store. The design was represented as being defendant's own, although it originated with plaintiff. The court held that these allegations were sufficient to establish a Lanham Act Claim, rather than a claim which was simply duplicative of a copyright infringement claim.

Defendant's reliance on *Dastar Corporation v. Twentieth Century Fox*, 539 U.S. 23; 123 S.Ct. 2041; 156 L. Ed., 2d. 18 (2003) is misplaced, as the facts are distinguishable and dicta in Dastar is actually supportive of the instant plaintiff's claim. Dastar copied and edited public-domain material and sold its version without attribution to the creators or former copyright holders of the originals. The court held that this did not constitute a "reverse passing off"[3] Lanham Act violation, because to apply the Lanham Act in the circumstances would violate copyright law principles by limiting the public's right to copy and use public domain materials. While the court recognized that passing off and reverse passing off were within Lanham Act coverage, it declined to extend such coverage to the activities at issue in *Dastar,* for reasons including the fact that the Lanham Act "should not be stretched to cover matters that are typically of no consequence to purchasers." 539 U.S. 23, 33. In the instant case, by contrast, Defendant's misrepresentation of the origin of the sales video it was using, and thereby its misrepresentation of the characteristics of its own camera system, were of great consequence to purchasers.

Further, the *Dastar* court noted that plaintiff's claim would have been sustained had *Dastar* simply bought some of plaintiff's video tapes and repackaged them as its own. That is

---

[3] "Passing off" occurs when a producer misrepresents his own goods or services as someone else's. "Reverse passing off" occurs when a producer misrepresents someone else's goods or services as his own. 539 U.S. 23, 28, fn.1

essentially what GSC alleges was done by Defendant. Defendant wrongfully obtained GSC's sales videos and used them for Defendant's own promotional purposes without attribution.

### C. Count II – Copyright Infringement

In its Motion, Defendant complains that Plaintiff does not adequately plead registration, which is an element of a copyright infringement claim. Registration is specifically pled in the proposed Second Amended Complaint attached hereto as Exhibit 1. (See Exhibit 1, par. 20)

### D. Count III – Computer Fraud and Abuse Act

Count III of the First Amended Complaint alleges violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030. As Defendant correctly notes, establishing a private cause of action for a violation of the Act requires proof of damage or loss aggregating at least $5,000 in value in a given year. Defendant complains that this element of the cause of action is not sufficiently pled.

Defendant's motion is not supported by *Bansal v Russ*, 513 F. Supp. 2d, 264 (E.D. Pa. 2007), the sole case on which Defendant relies. The *Bansal* court noted that its plaintiff did not allege that he had suffered $5,000 in economic damages as a result of CFAA violations, and that even a liberal construction of the Complaint did not suggest that any compensable economic loss resulted from the claimed CFAA violation. In the instant case, while the yearly aggregate damage caused to GSC by Defendant's CFAA violation is not yet known, Plaintiff specifically alleged costs to address and remedy the harm caused by the violation. Further, as is demonstrated by the Affidavit of Gregory S. Smith filed in support of Plaintiff's Answer to Defendant's Motion to Dismiss, Attached as Exhibit 2, the products sold by Plaintiff are quite expensive. If Defendant obtained only a handful of sales which would have been Plaintiff's but

for Defendant's CFAA violations, the minimum jurisdictional amount would be met. Discovery is required to develop the full extent of Plaintiff's injuries.

The situation presented here is analogous to that addressed by the court in *Kelly Services v. Eidnes,* 530 F. Supp. 2d 940 (E.D. Mich. 2008). Plaintiff brought a diversity action alleging, *inter alia*, that Defendant's violation of agreements with and obligations owed to Plaintiff resulted in damage in excess of $75,000. The Defendant attacked the existence of this jurisdictional prerequisite to diversity jurisdiction. Relying on the standard set forth in *Massachusetts Cas. Ins. Co. v. Harmon,* 88 F.3d 415 (6th Cir., 1996) the court noted that it is not a plaintiff's burden to prove the amount in controversy, but rather that "there must be a legal certainty that Plaintiff will not recover that amount for this matter to be dismissed for lack of subject matter jurisdiction." 530 F.Supp.2d. 940, 946. The court relied upon affidavits, observed that defendant had been successful and that it would take only several lost customers or contracts before plaintiff sustained over $75,000 in lost business, and denied that aspect of defendant's motion to dismiss because there was not a legal certainty that plaintiff would be unable to recover the minimum jurisdictional amount.

The rationale of *Kelly Services* is equally applicable to the case at bar. Given the allegations of the amended complaint and the allegations of Mr. Smith, Plaintiff contends that it cannot be stated to a legal certainty that Plaintiff's damages for the violations alleged in Count III fail to meet the required jurisdictional standard. Defendant's Motion to Dismiss Count III should be denied.

### E. Count IV – Unfair Competition

Count IV of the Amended Complaint alleges unfair competition. Fairly read, the amended complaint alleges that SheerVision competes with GSC in the sale of several product

7

lines. (par. 8). In fiscal 2010, SheerVision began targeting particular groups of GSC customers which had not previously been a SheerVision focus. (par. 10). SheerVision hired numerous GSC sales representatives or former sales representatives to provide it with the expertise necessary to compete with GSC. (par 11, 12). As part of that process, SheerVision obtained from former GSC sales personnel wrongfully retained and/or wrongfully shared GSC materials including GSC videos of dental and surgical procedures, sales kits, and other marketing materials. SheerVision accessed the business email account of GSC's salespeople and published a photograph of a GSC product, representing it as its own. Other acts are as quoted in Defendant's Brief. (par. 16, 17, 19, 20). Defendant claims that these acts, taken together, cannot constitute the tort of unfair competition as causes of action based on the individual component acts are preempted by either patent or copyright law.

Congress clearly intended that patent and copyright infringement claims could coexist with state law unfair competition claims. 28 U.S.C. §1338(b) was enacted so that a federal court could exercise jurisdiction over a state law unfair competition claim joined with a federal patent or copyright claim to avoid piecemeal litigation. *Mars, Inc. v. Kabushiki-Kaishi*, 24 F.3d 1368 (Fed. Cir.1994). That statute provides for original jurisdiction in the District Courts "of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws." There would be little reason for such a statute if the state law claim was preempted simply because the subject matter of a case also fell within the realms of copyright or patent law.

The *Mars* court observed that "unfair competition" is not rigidly defined and "encompasses a variety of types of commercial or business conduct considered contrary to good conscience." 24 F3d. 1368, 1373 (internal quotation marks omitted). Thus, in *Water*

8

*Technologies Corp. v. Calco*, 850 F2d. 660 (Fed. Cir.1988) the court recognized that "a distinct cause of action for unfair competition may arise in a factual context which also gives rise to a patent infringement claim." (850 F.2d 660, 671), while also inferring that this can occur only where the facts establish an unfair competition claim distinguishable from the patent infringement claim.

This approach supporting the pleading of Plaintiff's Count IV, is fully consistent with the case law upon which Defendant relies. As is discussed above, while the *Dastar* court held that a Lanham Act claim was preempted by copyright law on the facts presented, the result would have been different had *Dastar* merely repackaged someone else's public domain video tapes and sold them as its own. In the instant case, SheerVision took GSC's surgical videos and photograph and presented them as SheerVision's own. *Bravo Systems, Inc. v. Containment Technologies Corp.*, 96 F. 3d. 1372 (Fed. Cir. 1996) holds only that patent infringement "standing alone" does not provide a basis for an unfair competition claim, 26 F.3d. 1372, 1377. *ATC Distribution Group v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d. 700 (6 Cir. 2005), in part held that an unfair competition claim was preempted by federal law because the "only" basis for the claim was an alleged misappropriation of certain part numbers found to fall generally within the realm of copyright law. 402 F.3d 700, 713.

Defendant characterizes Plaintiff's unfair competition claim as alleging no more than "unauthorized use of the allegedly copyrighted video." (Defendant's Brief, p. 7). In fact, considerably more is alleged. The video was used in promotion to misrepresent the characteristics of Defendant's products sold in competition with GSC. A GSC copyrighted photo was used to depict Plaintiff's product. Plaintiff's confidential information was hacked by Defendant's employee Caouette. Plaintiff's marketing materials were retained by former

9

employees and delivered to Defendant. GSC's patents were violated by Defendant. Defendant engaged in a directed series of acts designed to obtain and exploit GSC's confidential and proprietary information and intellectual property for the benefit of Defendant and to the detriment of Plaintiff. These alleged facts adequately support a claim that the Defendant engaged in "commercial or business conduct considered contrary to good conscience," as that phrase is used in *Mars, supra.*

### F. Count V

Count V of Plaintiff's First Amended Complaint alleges infringement of its U.S. Patent No. 6,704,141.[4] Defendant's motion as to Count V appears to complain that the specific factual allegations demonstrating a right to relief are found in paragraph 9 of the general allegations and they are not repeated verbatim, but only incorporated by reference, in Count V itself. *Twombly*, on which Defendant relies, does not dictate precisely where in a complaint specific facts must be alleged, and Defendant appears to acknowledge that patent infringement is pled adequately if paragraph 9 is read together with the rest of Count V. Despite the fact that pleading of this Count is more than adequate, Plaintiff has identified in the proposed Second Amended Complaint hereto, specific claims of the patent which have been infringed.

---

[4] This Patent number is correctly alleged in Count V of the amended complaint. It is incorrectly stated as Patent No. 6,904,146 in paragraph 9 of the amended complaint  The correction to paragraph 9 has been made in the proposed Second Amended Complaint attached hereto.

## III. CONCLUSION

For the above stated reasons, Plaintiff prays for entry of an Order denying Defendant's Motion to Dismiss, and allowing Plaintiff to file the Second Amended Compliant attached hereto as Exhibit 1.

> s/ Neil J. Juliar
> Conlin, McKenney & Philbrick
> Co-Counsel for Plaintiff
> 350 South Main Street, Suite 400
> Ann Arbor, Michigan 48104
> (734) 761-9000 / (734)761-9001 (fax)
> Juliar@cmplaw.com
> P15625

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2010 I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification of such filing to the following:

| | |
|---|---|
| John G. Posa (P49445) | Robert C. Brandenburg (P28660) |
| Allen M. Krass (P16218) | John E. Nemazi (P33285) |
| litigation@patlaw.com | Robert C. J. Tuttle (P25222) |
| | rbrandenburg@brookskushman.com |

> s/ Neil J. Juliar
> Conlin, McKenney & Philbrick
> Co-Counsel for Plaintiff
> 350 South Main Street, Suite 400
> Ann Arbor, Michigan 48104
> (734) 761-9000 / (734)761-9001 (fax)
> Juliar@cmplaw.com
> P15625