**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GENERAL SCIENTIFIC CORP.,

                Plaintiff,                No. 10-cv-13582
                                                Hon. Gerald E. Rosen

vs.

SHEERVISION, INC.,
and THOMAS H. CAOUETTE, JR.

                Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT CAOUETTE'S
MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER**

**I. INTRODUCTION**

On October 6, 2010, General Scientific Corp. ("Plaintiff") filed a six-count complaint against Defendants SheerVision, Inc. ("SheerVision") and Thomas Caouette, Jr. ("Caouette"). Plaintiff alleges that Defendants have engaged in conduct including copyright violation, computer fraud and abuse, unfair competition, patent infringement, and breach of contract.

Caouette has moved to dismiss the claims against him--Counts I (Lanham Act), III (Computer Fraud and Abuse Act), and IV (unfair competition) of Plaintiff's complaint pursuant to Rule 12(b)(2)--alleging that this Court lacks personal jurisdiction over him. In the alternative, Caouette requests that this Court transfer Plaintiff's action to the U.S. District Court for the District of Maryland under 28 U.S.C. § 1404(a). SheerVision joins Caouette's request for transfer of venue.

Plaintiff responded to Caouette's motion, and Caouette has replied. Having reviewed the parties' submissions in support of and opposition to the motion and the accompanying record,

1

the Court finds that the pertinent facts and legal arguments are fully presented in these written materials and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. RELEVANT BACKGROUND

General Scientific Corp. and SheerVision, Inc. both participate in the highly competitive market for surgical loupe products, which includes telemicroscopes, lights, video cameras, and related accessories used by surgeons, dentists, and dental technicians. In 2007, believing that SheerVision had engaged in importation and sale of goods infringing on Plaintiff's patents, Plaintiff initiated an action in the International Trade Commission ("ITC"). The ITC action settled: Plaintiff covenanted not to sue, and SheerVision promised to cease importation and sale of the allegedly infringing goods.

Since early 2010, however, SheerVision has allegedly undertaken to poach members of Plaintiff's sales staff and use their knowledge of Plaintiff's business contacts and practices to compete against Plaintiff in the market for surgical loupe devices, some of which allegedly violate Plaintiff's patents. According to Plaintiff, SheerVision has hired five of Plaintiff's past employees, including Defendant Caouette. In particular, Plaintiff alleges that SheerVision and Caouette used a computer issued by Plaintiff and Caouette's access to Plaintiff's email servers to gather sales contacts, customer lists, pricing information, and copyrighted marketing material for use in SheerVision's commercial pursuits.

Plaintiff filed suit against Defendants on October 6, 2010. Plaintiff is a Michigan corporation with its principal place of business in Michigan. Defendant SheerVision is a

California corporation with its principal place of business in California. Defendant Caouette is a Maryland resident. Before the Court is a motion by Defendant Caouette to dismiss all Counts against him, namely Counts I, III, and IV of Plaintiff's Complaint or, in the alternative, to transfer this case to the U.S. District Court for the District of Maryland.

### III. ANALYSIS

**A.      Applicable Legal Standard for Determining Personal Jurisdiction**

A defendant may move to dismiss for lack of personal jurisdiction in lieu of answering a complaint. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction exists. *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). When the Court decides a Rule 12(b)(2) motion on the basis of written submissions and affidavits alone, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In considering written submissions and affidavits, the Court must construe the facts presented in the light most favorable to the Plaintiff. *Serras*, 875 F.2d at 1214.

In a case involving state law claims, such as this, the exercise of jurisdiction by the Court must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Michigan's long-arm statute extends limited jurisdiction over individuals in a number of circumstances set out in Mich. Comp. Laws § 600.705:

3

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of <u>any</u> business within the state.
> (2) The doing or causing <u>any</u> act to be done, or consequences to occur, in the state resulting in an action for tort . . . .

Mich. Comp. Laws § 600.705 (emphasis added). The Due Process Clause of the Fourteenth Amendment requires "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)). More specifically, the Sixth Circuit has explained that the due process inquiry requires the following: (1) that the defendant purposefully avail himself of the privilege of acting in the forum state; (2) that the cause of action arise from the defendant's actions in the forum state; and (3) that the actions of the defendant have a substantial enough relationship with the forum state to make the exercise of jurisdiction reasonable. *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). "It is often repeated that the first prong--purposeful availment--is the '*sine qua non* for in personam jurisdiction.'" *Air Products and Controls*, 503 F.3d at 550 (quoting *S. Mach.*, 401 F.2d at 381-82).

**B.     The Court has Personal Jurisdiction over Caouette.**

"[P]ersonal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)

4

(quotations omitted). As discussed below, the Court finds that Caouette is amenable to service under the Michigan long-arm statute and the exercise of personal jurisdiction would not deny Caouette due process. *Id.*

     1.    <u>Caouette is amenable to service under Michigan's long-arm statute.</u>

The Michigan long-arm statute permits the Court to exercise jurisdiction over Caouette for actions arising out of "[t]he transaction of any business within the state." Mich. Comp. Laws § 600.705(1). The standard is "extraordinarily easy to meet" in part because the phrase "any business within the state" means even the "slightest act of business in Michigan." *Kelly Servs., Inc. v. Noretto*, 495 F. Supp. 2d 645, 652 (E.D. Mich. 2007). *See also Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (applying the "slightest act of business" standard); *Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623 (1971) ("the word 'any' means just what it says. It includes 'each' and 'every'. . . . It comprehends the 'slightest'.").

Here, it is apparent that Caouette meets the "any business within the state" standard given the length and nature of Caouette's employment with Plaintiff. As Plaintiff makes clear, "Caouette interviewed at [Plaintiff's] offices in Ann Arbor, Michigan, was hired and trained at those offices, regularly visited Michigan for business purposes, and had regular and ongoing telephone and email contact with [Plaintiff's] Ann Arbor offices." (Pl.'s First Am. Compl. 4.) In *Superior Consulting Co. v. Walling*, 851 F. Supp. 839 (E.D. Mich. 1994), the Court held the Michigan long-arm statute satisfied when a corporation with its principal place of business in Michigan employed an out-of-state defendant who made several business trips to Michigan, was hired in Michigan, and maintained regular communications with the company's Michigan headquarters. 851 F. Supp at 844. While Caouette concedes that he visited Michigan at least eight times as an employee of Plaintiff, (*see* Def.'s Mot. to Dismiss ¶¶ 1,3), Caouette contends

5

that "[h]e [has] otherwise never visited Michigan." (Def.'s Mot. to Dismiss ¶ 3.) Notwithstanding that Caouette's acknowledged contacts with Michigan as Plaintiff's employee meet the Michigan long-arm statute, "the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Air Products and Controls*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459).

Moreover, contrary to Caouette's assertions, whether Caouette's contacts occurred before or after Caouette's termination is irrelevant for jurisdictional purposes. *See*, *e.g.*, *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) ("The quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre-or post-agreement communications.") (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985)). Therefore, Caouette meets the requirements of Michigan's long-arm statute. Interviewing in Plaintiff's Michigan office and subsequently visiting those offices at least eight times as an employee over the course of four years amply satisfies the "slightest act of business" standard. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

2.      Exercising Jurisdiction over Caouette Does Not Violate Due Process.

In addition to satisfying Michigan's long-arm statute, Caouette must have sufficient "minimum contacts" with Michigan such that finding personal jurisdiction will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945). To meet this inquiry, the Court must examine the three elements of due process: first, Caouette must have purposefully availed himself of contact with Michigan; second, Plaintiff's claims must arise out of Caouette's activities in Michigan; and third, a sufficient connection between Caouette's actions and the state of Michigan must exist to make the exercise of jurisdiction reasonable. *S. Mach. Co.*, 401 F.2d at 381.

The purposeful availment requirement "is the *sine qua non* for in personam jurisdiction[,]" *Air Products and Controls*, 503 F.3d at 550 (quotation omitted), and aims to protect defendants against being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts[,]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (internal citations omitted). This element requires that Caouette purposefully avail himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself" that create a "substantial connection" with the forum state or "continuing obligations" between the defendant and the forum state. *Burger King Corp.*, 471 U.S. at 475-76, 105 S. Ct. at 2184.

Here, Caouette purposefully travelled to Michigan to interview for a job with a Michigan corporation. (Pl.'s First Am. Compl. ¶ 13.) That employment relationship lasted four years, and Caouette returned to Michigan at least eight times for subsequent training during that period. (*Id.*) Caouette also maintained regular communication with Plaintiff's Michigan offices throughout the duration of his employment. (*Id.*) The Supreme Court has previously found personal jurisdiction where, as here, an out-of-state party knowingly and willingly forms a continuing business relationship with a party in the forum state. *See id.* at 479 (finding personal jurisdiction over Michigan franchisor that entered into 20-year franchise agreement in Florida and had few other contacts with forum state). The Sixth Circuit has found jurisdiction in circumstances that resemble this case as well. *See Air Products and Controls*, 503 F.3d at 551 (finding personal jurisdiction where parties' business relationship lasted nine years). Therefore,

Caouette has clearly satisfied the first prong of the due process inquiry by regularly and purposefully availing himself of the benefits of conducting business in Michigan.

Second, the Court must consider whether Plaintiff's claims against Caouette arise out of his employment with Plaintiff. The Sixth Circuit has articulated this standard in a number of ways, including "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Products and Controls*, 503 F.3d at 553 (citations omitted). Furthermore, the Sixth Circuit has "characterized this standard as a 'lenient standard' and [has] explained that the cause of action need not 'formally' arise from defendant's contacts." *Id.* (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). This prong is met as well because the allegations against Caouette--violation of the Lanham Act, violation of the Computer Fraud and Abuse Act, and unfair competition--were each "made possible by" or "lie in the wake of" Caouette's employment with Plaintiff. *Id.* at 553 (citations omitted). Though much of the alleged misconduct occurred after Caouette's termination, each act could not have occurred but for Caouette's prior employment. Caouette could not have provided SheerVision with Plaintiff's customer lists, sales media, and other data without prior access as Plaintiff's employee. (Pl.'s First Am. Compl. ¶¶ 14-16.) Therefore, Plaintiff's claims against Caouette arise out of Caouette's contact with Michigan.

Finally, Caouette's contacts with Michigan must be substantial enough to comport with "traditional notions of fair play and substantial justice." *Milliken v. Meyer*, 311 U.S. 457, 463 (1940) (quoted in *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "However, 'where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a <u>compelling</u> case that the presence of some other considerations

8

would render jurisdiction unreasonable.'" *Air Products and Controls*, 503 F.3d at 554 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (emphasis added). As discussed above, Caouette's contact with Michigan constituted purposeful conduct. Here, however, far from presenting a compelling case, Caouette's argument consists of two conclusory statements. Caouette merely states the following: "If the Court can find any connection to Michigan under the counts directed against Mr. Caouette, any such contacts would be tenuous at best. They should not be considered sufficient to support suit in Michigan." (Def.'s Mot. to Dismiss 3.) Having made no meaningful attempt to contest this prong of the due process inquiry, the Court is satisfied that Caouette's contacts with Michigan are substantial enough to comport with fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316. Therefore, for the reasons stated above, the Court finds that it has personal jurisdiction over Caouette.

C.      **Caouette's Requested Transfer of Venue Fails.**

In the alternative to his dismissal motion, Caouette requests that the Court transfer this case to the U.S. District Court for the District of Maryland. Even when filed in a proper venue, 28 U.S.C. § 1404(a) provides that the Court, "for the convenience of parties and witnesses, in the interest of justice . . . may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute affords the Court tremendous discretion, and the defendant must make three showings: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994) (citing *Int'l Show Car Ass'n v. ASCAP*, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992)). The decision to transfer is also guided by the following factors: "(1) The convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of

9

proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice." *Id.*  "[A] plaintiff's choice of forum will be given deference unless the defendant makes an appropriate showing." *Audi AG v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002).  Finally, "[t]ransfer is not appropriate if the result is simply to shift the inconvenience from one party to another." *Id.*

   Caouette claims that his status as a resident of Maryland renders suit in Michigan highly inconvenient.  (Def.'s Mot. to Dismiss 11.)   The parties do not dispute whether this suit could have been brought in the U.S. District Court for the District of Maryland.  *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994) (citing *Int'l Show Car Ass'n v. ASCAP*, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992)).  Therefore, the Court will focus its analysis on whether the transfer serves the interest of justice and the convenience of the parties and witnesses, with an eye toward the seven factors listed earlier.  *See id.* ("(1) The convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice").

   Of the seven *Kepler* factors, Caouette only claims that two favor suit in Maryland.  First, Caouette claims that the convenience of the parties favor transfer to Maryland because "maintenance of the litigation in Michigan would be a burden on Mr. Caouette," whereas Plaintiff "is a large multinational corporation, which [would] not be burdened by proceeding in Maryland."  (Def.'s Mot. to Dismiss 10.)  Second, Caouette claims that the convenience of the witnesses favors litigating in Maryland because any alleged actions undertaken by Caouette

10

"occurred outside of Michigan." (*Id.*)  The Court will deny Caouette's motion to transfer because Caouette's case for transfer merely shifts the inconvenience of trial from Defendant to Plaintiff, and Caouette has not made a sufficient argument to overcome the presumption in favor of Plaintiff's choice of forum.

Caouette, a Maryland resident, will doubtless face inconvenience from defending a suit in Michigan.  Transferring this case to Maryland would alleviate that burden, but only by shifting the burden to Plaintiff.  The resources available to each party are relevant to this determination, but a motion to transfer venue requires more.  For example, in *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940 (E.D. Mich. 2008), the Court rejected a requested venue transfer in a suit between a Michigan employer and an out-of-state former employee.  The Court denied the transfer request because, while each party claimed to have material witnesses in their respective locales, "a change of venue would only trade inconveniences." *Kelly Servs.*, 530 F. Supp. 2d at 949.  Caouette has presented no compelling reason for his request; it merely shifts the balance of inconvenience to Plaintiff.  *See id.*; *Audi AG v. Izumi*, 204 F. Supp. 2d 1014, 1023 (E.D. Mich. 2002).

Similarly, Caouette claims that the convenience of the witnesses favors a transfer to Maryland because Caouette's alleged misconduct occurred outside of Michigan.  (*See* Def.'s Mot. to Dismiss 10.)  The Court fails to see how Caouette's location shifts the witnesses' balance of convenience to Maryland.  While Caouette will likely serve as a witness in this case, Plaintiff is sure to call witnesses as well; and many of Plaintiff's witnesses likely reside in Michigan.  Therefore, for the same reasons as above, it does not appear that the convenience of the witnesses favor transferring this case to Maryland.  Caouette does not contest the remaining five factors.

11

Plaintiff's choice of forum receives a measure of deference when the Court considers a motion to transfer venue; the Court will not disturb Plaintiff's choice absent "an appropriate showing." *Audi AG*, 204 F. Supp. 2d at 1023.  Here, Caouette has failed to demonstrate that the "convenience of parties and witnesses" and "the interest of justice" favor transferring this case to the U.S. District Court of Maryland.  28 U.S.C. § 1404(a).  Absent such a showing, Plaintiff's forum choice prevails, and the Court will deny Caouette's motion.

## IV. CONCLUSION

For the reasons stated in this opinion, the Court finds that it has personal jurisdiction over Caouette and that transfer to the U.S. District Court for the District of Maryland would not serve the interest of justice.

THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, or, In the Alternative, to Transfer [Dkt. #12] is DENIED in its entirety.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: September 2, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 2, 2011, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137